UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEMAND MEDIA, INC., <br><br> Plaintiff, <br><br> v. <br><br> BEACON LAW ADVISORS, P.L.L.C., <br><br> Defendant. | No. 11-1831 <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Demand Media, Inc. ("Demand Media") brings this Complaint against Beacon Law Advisors, PLLC ("Beacon") and states and alleges as follows:

## I. PARTIES

1. Plaintiff Demand Media is an online media company and a corporation organized in the state of Delaware with is principal place of business in California.

2. Defendant Beacon Law Advisors PLLC is a law firm founded in the state of Washington and is a registered professional limited company under Washington law.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). The amount in controversy exceeds $75,000, exclusive of interest and costs.

COMPLAINT - 1
CASE NO. 11-1831

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Beacon is subject to personal jurisdiction here; and a substantial part of the events giving rise to the claim occurred here.

### III.   NATURE OF THE ACTION

5. This is a malpractice action by Demand Media against Beacon arising from Beacon's representation in connection with Demand Media's purchase of a website, "Mania.com" ("Mania"), from Chip Meyers ("Meyers").

6. Demand Media recently settled a claim against it by Meyers, paying a substantial cash settlement. During the litigation, Meyers was able to exploit numerous deficiencies in the contract documents drafted by Beacon, resulting in an allocation of risk between Demand Media and Meyers that significantly favored Meyers and therefore substantially increased the cost of the transaction. Beacon failed to explain to Demand Media the potential expense and liability exposure inherent in these deficiencies in the contracts drafted by Beacon.

7. The contract documents were also replete with inconsistencies and drafting errors, and failed to implement basic expectations by Demand Media such as: (1) that deferred stock compensation would be given as options, not restricted stock; and (2) that equity, in whatever form, would be subject to the terms of Demand Media's Equity Incentive Plan and IPO Underwriters Lockup Agreement which imposed certain restrictions on Meyers' ability to dispose of the shares once he received them. These problems enabled Meyers to claim substantial damages using the peak or near peak post IPO stock price for his deferred stock compensation, and to allege that he would have been able to sell the entire potential maximum stock compensation of 450,000 shares at more than $20 per share ($10 million post-split basis).

8. As a direct and proximate result of Beacon's acts and omissions, Demand Media has been injured resulting in direct and consequential damages in an amount to proven at trial, including direct and consequential damages comprising a substantial cash payment to Meyers

COMPLAINT - 2
CASE NO. 11-1831

in settlement of his lawsuit, substantial attorneys' fees incurred in defending against Meyers' claims, and Demand Media's losses incurred on the acquisition and operation of Mania.

9. Had Demand Media received the necessary advice for which it had retained Beacon, and had the contracts been properly drafted, this would have imposed realistic expectations on Meyers that likely would have caused him to take a competing offer for Mania. Alternatively, with the proper advice concerning the risks associated with an earn-out requiring "unqualified efforts" by the buyer to enable the earn-out, unrestricted stock subject to market fluctuations, etc., Demand Media would not have agreed to the terms memorialized by Beacon. Thus, Demand Media also claims recovery of substantial losses it has incurred on the acquisition and operation of Mania and two websites recommended by Meyers.

## IV.   FACTUAL ALLEGATIONS

10. Beacon represented Demand Media in connection with Demand Media's purchase of Mania from Meyers. Mania is a "Genre" entertainment website, featuring alternate reality games and related media focusing on Sci-Fi, Fantasy, Horror and Anime.

11. The terms of the acquisition were memorialized in an Asset Purchase Agreement ("APA") and Employment Agreement (collectively attached hereto), each dated effective October 29, 2007. Beacon drafted the APA and the Employment Agreement for Demand Media, and represented Demand Media in connection with the negotiations.

12. The APA provided, *inter alia*, that Meyers would sell Mania to Demand for $1.5 million cash paid in a lump sum upon closing, and an "earn out" of potentially in excess of 450,000 shares of Demand Media stock, identified in the APA as follows:

- 280,000 "Target Shares", earned if Mania hit $1.7 million in EBITDA during any trailing 12 month period between 10/31/07 and 12/31/09;
- 70,000 "Bonus Shares," earned if Mania achieved an average of 50 million page views (as measured by Google Analytics) during any three month period between 10/31/07 and 12/31/09;

COMPLAINT - 3
CASE NO. 11-1831

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

126225.0001/5206244.1

- 100,000 "Employment Shares", 30,000 of which would be earned on the first anniversary of his employment, 30,000 more shares would be earned on the second anniversary of his employment, 30,000 more shares are earned on the third anniversary of his employment, and 10,000 shares would be earned on the fourth anniversary of employment; and

- "Efficiency Earn Out Shares," equal in value to one-half of the savings in the event Plaintiff hit the $1.7 million EBITDA without using the entire Roll-Up amount (as defined below).

13. In addition, Meyers and Demand Media entered into an Employment Agreement pursuant to which Meyers would receive $125,000, plus benefits, annually. Demand Media gave Meyers the title of General Manager of Genre Entertainment.

14. The APA provided that, subject to Demand Media's approval, Meyers would receive access to a $4.1 million budget (identified in the APA as the "Roll-up Amount") to use for Mania's acquisition of synergistic websites. The $4.1 million budget was comprised of $3.5 million in cash and 100,000 shares of Demand Media stock, valued by the APA at $600,000.

15. The earn-out clauses applied to revenue generated by Mania and the acquired websites collectively. Mania earns revenues primarily through advertising. The objective was that Meyers would aggregate or "roll up" the acquired web sites with Mania and thereby rapidly grow the business that Demand Media had acquired.

16. The acquisition turned out to be extremely disadvantageous for Demand Media, in terms of the lack of success of Mania itself, and the failure of any successful acquisitions of websites to materialize. Meyers failed to achieve any of the parties' financial goals and milestones or to grow Mania. During the course of his employment, Meyers never came close to meeting the EBITDA targets as set forth in the APA. Also, Demand Media incurred substantial losses on Mania and the web sites acquired by Meyers.

COMPLAINT - 4
CASE NO. 11-1831

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

126225.0001/5206244.1

17. Meyers subsequently resigned from his employment effective April 30, 2009.

18. Following his resignation, in October 2009, Meyers sued Demand Media. He alleged three causes of action: fraud, negligent misrepresentation, and breach of contract.

19. Meyers' fraud and negligent misrepresentation claims alleged that Demand Media induced him to sell Mania by making false representations or promises during the negotiations that Demand Media would make the Roll-Up Amount available to him upon his demand. He claimed that Demand Media never really intended to provide the Roll-Up Amount.

20. Meyers alleged that Demand Media withheld from Meyers the balance of his Roll-up Amount, $3.5 million of which allegedly remained after $600,000 was spent on a few unprofitable acquisitions, which Demand Media should have provided essentially on demand. Meyers alleged that "[h]e provided Demand with a target list of over 50 acquisitions but no acquisitions were permitted."

21. Meyers also alleged that Demand Media made oral promises to provide him with "a qualified fully funded premium ad sales team" to replace the advertising vendor that Mania had previously used. He alleged that Demand Media did not intend to keep and did not keep these promises.

22. Meyers alternatively argued that even if Demand Media originally intended to keep these promises, its failure to fulfill them constituted breaches of the APA. Meyers alleged that "Demand breached the APA by failing to make the Roll Up Amount available after March 2008 and did not have an adequate advertising sales staff," and that "[t]his prevented Meyers' ability to perform under the APA" and realize the Target Shares, Bonus Shares, Employment Shares, or Efficiency Earn Out Shares.

23. Meyers alleged that he was entitled to the 450,000 shares of Demand Media stock at a value that was tied to the price of Demand Media stock shortly after its IPO in early 2011– the most optimal occasion for Meyers to sell his stock. At that time, Demand Media's stock averaged $21.20 per share and hit a high of over $27.00. However, Demand Media

COMPLAINT - 5
CASE NO. 11-1831

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

126225.0001/5206244.1

1  undertook a 2 for 1 reverse stock split. Thus, according to Meyers' damages theory, the
2  relevant number of shares to multiply was 225,000 shares (one-half of 450,000). Multiplying
3  225,000 shares times the average price and the highest price in the first quarter of 2011
4  provides a damage range of $4,770,000 to $6,075,000.

5  24. During the litigation, it became evident that Meyers' claim posed a substantial
6  risk to Demand Media because of deficiencies in various provisions of the APA and the
7  Employment Agreement. These included the following:

8  25. **Ambiguity of the Acquisition Approval Process.** The APA provides that
9  Demand Media will "make available" the Roll-Up Amount. The APA also provides that such
10 Roll-Up Amount must be "approved in writing in advance by buyer." But, the APA does not
11 define the phrase "make available," nor does the APA otherwise contain standards for
12 determining Demand Media's obligation to approve Meyers' use of Roll-Up Amount funds for
13 acquisitions. Meyers claimed he had unrestricted discretion as to use of the Roll-Up funds.

14 26. **Absence of Standards for Demand Media's Provision of Sales and**
15 **Marketing Resources.** Meyers was able to allege that Demand Media made oral promises to
16 provide him with "a qualified fully funded premium ad sales team" because neither the APA
17 nor the Employment Agreement contains any metric for Demand Media's duty to provide sales
18 and marketing resources. Nor is there any provision for allocating responsibility for generating
19 sales of advertising space.

20 27. **Absence of Provision for Valuing the Deferred Stock Compensation.**
21 Meyers was able to claim that he would have sold the shares at or near their peak price
22 following Demand Media's IPO. This was because the APA contained no provision for
23 valuing the deferred Target Shares, Bonus Shares, Employment Shares, or Efficiency Earn Out
24 Shares in the event of a dispute between the parties, such as a liquidated damages provision.
25 The APA values the stock at $6.00 per share; but even this might have overstated the benefit of
26 Meyers' bargain. This price would not necessarily have taken account of the risk and time
27 value associated with shares as deferred compensation. Unfortunately, the APA does not set

COMPLAINT - 6
CASE NO. 11-1831

forth the purpose of the $6.00 per share valuation, in terms of the consideration received by Meyers, so the parties were in the dark on this issue.

28. **Ambiguity Concerning Demand Media's Stock Option Grant to Meyers.** Meyers was able to exploit conflicts between the Employment Agreement and the APA that enabled him to argue that Demand Media awarded him outright stock grants rather than stock options. Stock options, subject to Demand Media's equity incentive plan, would be the norm for Demand Media and Internet startups. This was apparently intended by Demand Media given that the more specific reference to them existed in the Employment Agreement. Paragraph 3 of the Employment Agreement refers to a "STOCK OPTION GRANT". However, other sections of the Employment Agreement and the APA state that the shares were grants and not options. Moreover, tellingly, neither agreement identifies an option price.

29. **Failure to Adequately Provide that Meyers' Deferred Stock Compensation Was Subject to Demand Media's Equity Incentive Plan and IPO Underwriter Lockup Agreement.** Deficiencies in the APA and the Employment Agreement enabled Meyers to argue that neither the APA nor the Employment Agreement required Meyers to execute a restricted stock or stock option agreement with Demand for his 450,000 Target, Employment and Bonus shares, which is a standard requirement for a transaction of this nature. Paragraph 3.16 of the APA provides that the grant is for "restricted" stock, but neither the Employment Agreement nor the APA defines that term. Moreover, the documents repeatedly reference "shares" but without the important qualification that the shares will be restricted. Meyers argued that the only restriction was that provided by law under SEC Rule 144, namely, that he hold the stock for at least one year before selling. As Demand Media's IPO was more than one year after the date Meyers alleged he should have received his stock - at the latest on December 31, 2009 – he was able to argue that his damages were determined by the peak or near peak sales price during the first quarter after Demand Media's IPO in January 2011.

30. **Failure to Clearly Provide for Liquidated Damages Upon Early Severance.** Paragraph 6 of the Employment Agreement, titled "Termination of Employment," was vague

COMPLAINT - 7
CASE NO. 11-1831

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

126225.0001/5206244.1

1  and confusing in that it did not provide for either party's rights in the event that Meyers quit, only if Demand Media terminated him with or without cause.  As noted above, Meyers claimed he was entitled to recover the full 450,000 potential Target Shares, Bonus Shares, Employment Shares, or Efficiency Earn Out Shares.  Demand Media alleged he was only entitled to recover the 30,000 vested Employment Shares.  Meyers claimed that Demand Media's breaches precluded him from realizing the 450,000 shares.  The ambiguity in the Employment Agreement's "Termination of Employment" provision coupled with absence of standards for the availability of "Roll-up Amounts" to Meyers gave rise to myriad potential outcomes at trial.  This provision was supposed to function as a liquidated damages provision, which was badly needed in light of the substantial deferred stock compensation components of the APA and the Employment Agreement, but it failed to serve such a function.

31.  **Conflicting Dispute Resolution Clauses.**  Another indication of lack of care in drafting the contract is that the Employment Agreement contained an arbitration clause, but the APA did not.  As a result, Meyers succeeded in persuading the Court to deny Demand Media's motion to compel arbitration.

32.  **Absence of Incorporation Language.**  Much of the ambiguity could have been avoided had the APA and the Employment Agreement cross-referenced one another as incorporating one another's terms, such as, for example, providing explicitly that the other agreement's terms are incorporated by reference, or appending a copy of one agreement to the other agreement.

33.  The standard of care required Beacon to include terms in the APA that preserved for Demand Media, as the owner of the company, the prerogative to undertake acquisition of websites or not, and the extent of sales resources to invest in Mania.  Specifically, and as a non-exhaustive list of examples, Beacon could have, and should have, suggested clauses that specified:

- The procedure for submitting acquisitions for approval;
- Who had the responsibility to identify acquisition targets;

COMPLAINT - 8
CASE NO. 11-1831

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

126225.0001/5206244.1

- Who would conduct the due diligence;
- What information should be included in any proposal to Demand Media;
- What criteria would be considered by Demand Media for approving or disapproving any proposal, or whether Demand Media retained the discretion to act in the company's—not Meyers'—overall best interests;
- How many sales people and man-hours would be provided to Meyers to support him;
- What remedy (such as potentially liquidated damages) in the event Demand Media failed to make all resources available that the APA identified as potentially available to Meyers, including dispute resolution procedures;
- Whether or to what extent Demand Media agreed to operate consistently with how Meyers operated before the transaction or per an existing business plan;
- Whether or not Demand Media was required to use its best efforts (or "reasonable" or "commercially reasonable" efforts) to achieve the earn-out; or whether Demand Media was entitled to exercise business judgment in the overall best interests of the company;

34. Further, Beacon should have addressed with Demand Media risks associated with not including provisions such as the foregoing in the APA, or the varying risks associated with various alternative provisions addressing the foregoing issues.  Beacon should have warned Demand Media that provisions containing an unrestricted covenant requiring specific action or expense that must be undertaken by the buyer may be construed by a court as requiring such actions or expenses (as occurred in Demand Media's litigation with Meyers) regardless of Demand Media's best judgment preferred course in the overall best interests of the company.

35. Due to Beacon's omissions, however, Meyers was able to argue that Demand Media was preventing him from reaching his financial goals.  Had an objective set of criteria been provided, Meyers would not have been able to argue that Demand Media was, on a wholesale basis, stopping all acquisition activity, because a specific procedure for reviewing proposals from Meyers would have been in place by which one could determine whether a

COMPLAINT - 9
CASE NO. 11-1831

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

126225.0001/5206244.1

1  proposal was appropriate for consideration including based on the best interests of the overall
2  company.  Further, the APA should have explicitly enabled Demand Media to accept or decline
3  proposed website acquisitions in the overall best interests of the company, inasmuch as this
4  right comported with Demand Media's reasonable expectations at the time it entered into the
5  APA.  Indeed, this was the reason that Mania's web site acquisitions were made subject to
6  Demand Media's final approval.

7  36. As alleged above, the APA lacked a provision for valuing the deferred stock
8  compensation, the APA and the Employment Agreement inconsistently provided for stock
9  option and outright stock grants to Meyers, there was no stock option price, the APA failed to
10 provide that the deferred stock compensation would be subject to Demand Media's Equity
11 Incentive Plan and/or IPO Underwriter Lockup Agreement, the Employment Agreement failed
12 to provide a clear and enforceable liquidated damages provision, Beacon included an
13 arbitration clause in the Employment Agreement but not in the APA, the APA failed to provide
14 for a value for Meyer's deferred stock compensation shares and to set forth the purpose of the
15 valuation, and Beacon failed to provide incorporation language in the two related agreements.

16 37. These deficiencies in the agreements caused Demand Media substantial
17 damages.  For example, Meyers was able to claim that he could have sold 450,000 shares of
18 Demand Media stock at the peak or near peak IPO price.  This would not have been possible
19 with a proper mechanism for valuing the stock and restrictions that are standard in these
20 situations.  It is standard for earn-out agreements to expressly set forth procedures for the
21 resolution of earn-out disputes.

22 38. These myriad errors and omissions establish that Beacon did not prepare the
23 contract documents with requisite due care.  Further evidence of a lack of due care is
24 significant scrivener's errors by Beacon evidenced by inconsistencies between the parties' term
25 sheet and the contract documents.

COMPLAINT - 10
CASE NO. 11-1831

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

126225.0001/5206244.1

39. As result of these problems, Demand Media could not prevail by summary judgment in the underlying case, and had to settle approximately five weeks before trial for a substantial cash payment to Meyers. In addition, it incurred substantial attorneys' fees.

40. Further, had Demand Media received the necessary advice for which it had retained Beacon, and had the contracts been properly drafted, this would have imposed realistic expectations on Meyers that likely would have caused him to take a competing offer for Mania. Meyers cited the problems identified above with the APA and the Employment Agreement as inducements that caused him to reject the competing offer. Or, with the proper advice concerning the risks associated with an earn-out requiring "unqualified efforts" by the buyer to enable the earn-out, unrestricted stock subject to market fluctuations, etc., Demand Media would not have agreed to the terms memorialized by Beacon. Thus, Demand Media also claims recovery of substantial losses it has incurred on the acquisition and operation of Mania and two websites recommended by Meyers.

## V.  CLAIM FOR RELIEF

### COUNT I

### PROFESSIONAL NEGLIGENCE

41. Demand Media repeats and incorporates by reference the allegations in the preceding paragraphs.

42. By the nature of the relationship, responsibilities, and positions of Beacon *vis a' vis* Demand Media, Beacon had a duty to act in a manner that was consistent with the applicable standard of care for the legal profession for the benefit of, or affecting, Demand Media. Beacon had, among other things, the duty to act competently and reasonably on behalf of Demand Media with sufficient knowledge, skill, thoroughness and preparation necessary for the representation or services they provided; to explain matters to Demand Media to the extent reasonably necessary to permit Demand Media to make informed decisions regarding matters within the scope of such representation or services.

COMPLAINT - 11
CASE NO. 11-1831

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

126225.0001/5206244.1

43. Beacon breached duties of care that it owed to Demand Media by failing to perform legal services in a manner in conformity with the applicable standards of care as set forth above.

44. As a direct and proximate result of Beacon's acts and omissions, Demand Media has been injured resulting in direct and consequential damages in an amount to proven at trial, including direct and consequential damages comprising the cash payment to Meyers in settlement of his lawsuit, substantial attorneys' fees incurred in defending against Meyers' claims, and substantial losses it has incurred on the acquisition and operation of Mania and two websites recommended by Meyers.

## COUNT II

## BREACH OF FIDUCIARY DUTY/REQUEST FOR INJUNCTIVE RELIEF

46. Demand Media repeats and incorporates by reference the allegations in the preceding paragraphs.

47. Demand Media has repeatedly demanded and Beacon has repeatedly refused to produce copies of files in Beacon's custody and control related to the Mania transaction, including a copy of the engagement letter between Beacon and Demand Media. Beacon's refusal to comply with Demand Media's legitimate request for copies of its files related to the Mania transaction, including the parties' contract, has impeded Demand Media's ability to investigate fully claims against Beacon. Demand Media reserves the right to allege additional claims after a complete review of all relevant documents in Beacon's custody or control.

48. Beacon's refusal to comply with this request constitutes a breach of fiduciary duty that has injured Demand Media in an amount to be proven at trial. Demand Media also requests an order enjoining Beacon to produce all documents in its custody or control related to the Mania transaction.

## V. PRAYER FOR RELIEF

WHEREFORE, Demand Media prays for relief as follows:

COMPLAINT - 12
CASE NO. 11-1831

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

126225.0001/5206244.1

1. For a judgment against Beacon in an amount to be proven at trial, including direct and consequential damages comprising the cash payment to Meyers in settlement of his lawsuit, substantial attorneys' fees incurred in defending against Meyers' claims, and losses it has incurred on the acquisition and operation of Mania and two websites recommended by Meyers;

2. For an order enjoining Beacon to produce all documents in its custody or control relate to the Mania transaction, including a copy of the engagement letter between Demand Media and Beacon;

3. That Demand Media be awarded its attorneys' fees and the costs of pursuing its claims;

4. Interest; and

5. Such other and further relief as the Court determines is just and proper.

### VI.    DEMAND FOR A JURY TRIAL

Demand Media hereby demands a trial by jury on any and all issues so triable.

DATED:  November 1, 2011

                                                  LANE POWELL PC

By: *s/ John Neeleman*
    John R. Neeleman, WSBA No. 19752
Attorneys for Plaintiff Demand Media, Inc.,

COMPLAINT - 13
CASE NO. 11-1831

126225.0001/5206244.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

# **CERTIFICATE OF SERVICE**

Pursuant to RCW 9.A.72.085, the undersigned certifies under penalty of perjury under the laws of the State of Washington, that on the 1st day of November, 2011, the document attached hereto was presented to the Clerk of the Court for filing and uploading to the CM/ECF system. I hereby certify that I have mailed by United States Postal Service and served by ABC the document to the following non-CM/ECF participants:

Beacon Law Advisors, PLLC
c/o Van Katzman, Registered Agent
801 2nd Avenue, Suite 614
Seattle, WA 98104

Executed on 1st day of November, 2011, at Seattle, Washington.

By: *s/ Ian Rountree*
Ian Rountree

COMPLAINT - 14
CASE NO. 11-1831

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

126225.0001/5206244.1